## CARTER et al. v. ATCHISON, T. & S. F. R. CO.

No. 24736.   March 24, 1936.

Cunningham & Scott and Yancey, Spillers & Fist, for plaintiffs in error.

Rainey, Flynn, Green & Anderson and Biddison, Campbell, Biddison & Cantrell, for defendant in error.

PER CURIAM. This action was brought by the Atchison, Topeka & Santa Fe Railway Company against the Exchange National Bank of Tulsa, Okla., and Ella Carter and James Carter her husband, for the recovery of the sum of $1,800, and it grew out of the following state of facts:

In December, 1917, the Carters, acting by their agent, C. B. Hill, entered into an option contract with Murray Russell whereby they agreed to sell Russell an option to purchase a certain lot in Tulsa, Okla., and they were to be paid the sum of $1,800 in cash for such option, and if the sale were made they were to be paid $16,700 more. This contract was conditioned upon notice of purchase of the lot to be given in 90 days, the furnishing of an abstract showing proper title, and the execution of a deed and payment of the price promised.

Notice of purchase was duly given, abstract furnished showing satisfactory title, deed executed and delivered, and the money promised in the option contract, to wit, $16,700 in addition to the $1,800 paid for the option itself, was duly paid to the Carters, excepting the sum of $608 was paid to Russell and Abbott and that matter will be discussed later on.

Before signing the option agreement, and apparently as an afterthought, it was considered by the parties that possibly the sale of the lot in question might be subject to a "war profit tax"; but no one knew to a certainty that such a tax existed, or what would be the amount thereof. But it was thought by all parties that if such a tax did exist, it would have to be paid by the seller, but if not so paid, the U. S. Government would hold a lien on the lot sold for such tax as against the buyer. To meet this contingency a written-in provision was inserted in the option contract requiring the purchaser to pay as much as $1,800 of such tax if any proved to exist, leaving the remainder, if there were any remainder, to be paid by the Carters, the sellers. Thereupon the sum of $1,800 was placed in escrow in the Central National Bank of Tulsa, to be paid on such war tax if any proved to exist, but otherwise to be disbursed by direction of the parties.

It turned out that no war tax was ever required to be paid; and the parties never made any agreement for a disposition of the escrow money. Said Central National Bank was merged into the Exchange National Bank, and the Atchison, Topeka & Santa Fe Railway Company became the successor in right of the Tulsa & Santa Fe Railway Company, for which said Russell had been acting as agent in the option contract, and to which latter railway company the deed to the lot in question had been delivered.

The Atchison, Topeka & Santa Fe Railway Company claim this escrow money because they say it was never used or needed for the purpose for which it was placed in the bank; and it was never intended to be paid to the Carters. The latter claim this money because they say it will take that much more to make up the full consideration to them recited in the deed, to wit, $20,300.

The question for the court then to decide is, which of the parties shall have this escrow money. The trial court resolved it in favor of the railway company by instructing the jury to return a verdict in its favor. The correctness of that decision is challenged by this appeal.

We think the ruling of the trial court was right. The sole question is, whether we are to be governed by the consideration recited in the option contract, or by that stated in the deed. The option contract must be deemed the best evidence of the intention of the parties. That contract contains the solemn obligations of all the parties and is the sole measure of their respective rights. The trial court was right in refusing to admit parol testimony tending to vary or contradict its terms. It is plain, simple, and unambiguous. No fraud, accident or mistake is shown or charged in its execution. Such a contract cannot be varied, changed, or modified by parol testimony.

The plaintiffs in error contend for the proposition that the consideration recited in a deed may be shown by parol evidence to have been different from that stated in the deed. It supports the point by an array of authorities convincing and indisputable. Its defect, however, lies in the fact that plaintiffs in error are not trying in this case to prove a different consideration than that stated in the deed. Their contention is that the deed recites the true consideration promised to be paid them for the deed. Their many authorities then serve them no purpose. In all the reported cases which we have read the question always arose in an attempt to show that there was some other or different consideration, or none at all, than that stated in the deed.

In fact, if the authorities prove anything pertinent to the issue in this case, they show that the consideration stated in the deed may be contradicted by the option contract. It is so contradicted.

The error here complained of was the refusal of the trial court to permit the defendants to testify orally that the consideration recited in the deed was the true consideration promised them for their property. This parol testimony was excluded by the trial court, not on the ground that they could not show by parol evidence that they had not received the full consideration recited in the deed, nor that by such testimony they could not prove a different consideration than that stated in the deed, but their parol evidence was excluded because such testimony would have the effect of contradicting, varying, or changing the terms of their written option contract for the sale. The governing rule on his point is well stated in 17 Cyc. 656;

"A recital in a written instrument as to the payment of the consideration is merely in the nature of a receipt, and may be contradicted, unless such contradiction would have the effect of rendering nugatory some substantial and contractual provision of a valid written contract or undertaking, or in case of a conveyance where the grantor, or those claiming under him, attempts by contradicting the consideration clause to defeat the operation of the deed."

We see no difficulty in explaining how the deed was made to state a consideration of $20,300. It was written by officials of the railway company. At the time it was delivered, the railway company was in fact out of pocket, so to speak, the full sum of $20,300. Adding the sums together, $1,800 for the option itself, $16,700 for the option purchase price, and $1,800 in the bank in escrow, aggregate the sum of $20,300. If the $1,800 in escrow had been actually consumed in payment of a war profit tax, as all parties then supposed it would be consumed, the railway company would have been out the full sum of $20,300 as the whole consideration paid for the property. That explains, we think, why those figures were written in the deed.

It is plain that it never was the intention of the parties that the $1,800 in escrow, or any part of it, should be paid to the plaintiffs in error.

Counsel for plaintiffs in error also complain of the refusal of the trial court to allow them to amend their cross-petition so as to make a claim for the $608 paid by the defendant in error to Russell and Abbott. We think the court was right in that ruling. That payment is mentioned in the cross-petition with apparent approval of the defendants. But during the trial it appeared that it might have been made without authority from the defendants. However, such an amendment at that stage of the proceedings would have in fact introduced a new cause of action, and thereby have substantially changed their claim as cross-petitioners. Permission of such an amendment during the trial is denied by the provisions of section 251, Okla. Stats. 1931.

Also such proposed amendment was objected to by the plaintiff. Doubtless, it was not ready for trial on that issue, and having had no notice of such a claim beforehand, it could not have been expected to be ready. There was no error in its exclusion.

Counsel for defendant in error discuss at length the proposition of law that a written contract cannot be changed, abrogated, or modified, except by an agreement in writing or an executed oral agreement. The statutes on this matter are quoted and construing decisions reviewed. The latter are authoritative and undisputed. But in this case there was no evidence admitted, or even attempted to be introduced, showing any change in the option contract had been made or tried to be made, either by another written agreement or by an executed oral agreement.

Therefore we find that the original option contract still stands in full force, unimpaired, valid and binding.

The judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys O. W. Patchell, J. T. Wheeler, and J. D. Cofield in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Patchell and approved by Mr. Wheeler and Mr. Cofield the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL. C. J., and BAYLESS PHELPS, CORN, and GIBSON, JJ., concur.